# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

| | | |
|---|---|---|
| PARTNERSHIP FOR CIVIL JUSTICE FUND | ) | |
| 617 Florida Ave. NW | ) | |
| Washington, D.C. 20001 | ) | Civil Action No: 16-1581 |
| | ) | |
|      Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF THE | ) | |
|   INTERIOR | ) | |
| 1849 C Street, N.W. | ) | |
| Washington, D.C. 20240 | ) | |
| | ) | |
| UNITED STATES GENERAL SERVICES | ) | |
|   ADMINISTRATION | ) | |
| 1800 F Street, N.W. | ) | |
| Washington, D.C. 20006 | ) | |
| | ) | |
|      Defendants | ) | |

_____)

## COMPLAINT FOR INJUNCTIVE RELIEF
### (Freedom of Information Act)

1.  This action is brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

    *et seq.*, as amended. Plaintiff seeks injunctive and other appropriate relief for the

    disclosure and production of information regarding traditional and historic public fora

    sidewalk and street areas abutting the Trump International Hotel in the Old Post Office

    Building in Washington, D.C., including communications and agreements restricting

    public access in favor of priority, restricted or exclusive use for the private gain of the

    Trump Organization.

2.  This lawsuit seeks the release of information being held by the federal government

regarding specific and particular aspects of the "deal" reached with the Trump
Organization to turn the historic Old Post Office on Pennsylvania Avenue into a Trump
International Hotel. Specifically, it seeks disclosure of information regarding agreements
entered into by the General Services Administration (GSA), the National Park Service
(NPS) and/or the Department of the Interior (DOI) that appear to take public space on
"America's Main Street" traditionally open for First Amendment-protected free speech
and dissent, and create a "buffer zone" around the Trump Hotel restricting access to
exclusive or priority use of the Trump Organization.

3.  The Partnership for Civil Justice Fund (PCJF) has requested documents, communications,
    applications, evaluations, permits and agreements regarding the use of public sidewalk
    and/or street space abutting the Hotel. This information has been sought by the PCJF for
    over five months, yet the federal agencies in whose possession it remains have refused to
    produce any responsive information despite a legal obligation to make such information
    public. Similar requests have been made of the District of Columbia municipality, and
    such requests are the subject of separate litigation.

4.  This lawsuit is not about the Old Post Office Building, *per se*. It is about the public
    spaces along Pennsylvania Avenue in proximity to that property, including the sidewalks,
    the large plaza surrounding the Benjamin Franklin statue at the corner of 12th Street NW
    and Pennsylvania Avenue, and Pennsylvania Avenue itself. Such spaces have been
    historically accessible to the public for protest, dissent, assembly and special events, as
    they constitute quintessential public forums. Pennsylvania Avenue is under the
    jurisdiction of the District of Columbia. The sidewalks and plaza space abutting the
    Trump Hotel are under the jurisdiction of the federal government.

5.  Few avenues, and public spaces, are as historically significant for free speech and public

    assembly as are Pennsylvania Avenue and the sidewalks and plazas abutting it.

    Throughout the Nation's history, these public spaces literally constitute the ground on

    which the people stand, as they have marched and rallied on the avenue and its sidewalks

    and plazas in dissent and free expression, often challenging those institutions of power

    and authority whose buildings or headquarters abut that august avenue, known as

    "America's Main Street." These public spaces have been consecrated by the expressions

    of democracy and dissent of the people of the United States. That ground may now be

    pulled out from underneath the feet of those who wish to engage in protest on or along

    Pennsylvania Avenue in proximity to the new Trump International Hotel.

6.  In 1965, the public spaces and historic buildings of Pennsylvania Avenue - - upon

    consideration of this venerable history - - were designated a National Historic Site, then

    only the thirty-third such site in the Nation's history to secure such protected status.

7.  The public is entitled to know whether and to what extent the federal and municipal

    governments have entered into agreements that will suppress or extinguish free speech in

    proximity to the building leased to the Trump Organization, which is led by a presidential

    candidate who has stated an extraordinary and open hostility to the First Amendment.

    Trump has called for protesters to be "roughed up" and "carried out on a stretcher,"

    offered to pay the legal fees of persons who assault protesters, deployed security who

    have assaulted protesters and destroyed protest signs outside the Trump Tower on Fifth

    Avenue in New York City, suggested he would be in favor of "closing" the internet under

    certain circumstances, indicated he would like to rewrite libel laws to suppress

    unflattering press coverage, and revoked press credentials from The Washington Post,

The Huffington Post, Buzzfeed, Univision, The Daily Beast, The Des Moines Register and Politico.

8.  In 2013, the U.S. Government announced a new institution of power and politics would be moving to Pennsylvania Avenue, the Donald Trump Organization. The U.S. General Services Administration announced that it would lease the historic Old Post Office Building to the Trump Organization, where it would be renamed after Mr. Trump and become a hotel, convention center and spa.

9.  Whether Mr. Trump wins or loses, he has become a political leader whose prominent visibility, openly racist and sexist views, and significant influence on public discourse and policy will make his building on Pennsylvania Avenue a natural beacon for public protest. Trump's marriage of capital interests, political views, Presidential ambitions, and reality TV showmanship invites protest and free speech and assembly on the public spaces near the Trump Hotel. Pennsylvania Avenue and its sidewalks, running from the White House to the Capitol grounds, are, as above, primary locations for free speech activities on all manner of issues in the Nation's Capital and have also been the site of many cultural events of national and local significance. The public spaces of Pennsylvania Avenue including the sidewalks and plaza abutting the hotel do not belong to Donald Trump.

10. The information regarding the Trump International Hotel in the Old Post Office Building in Washington, D.C., has emerged as a topic of public discussion during the 2016 presidential campaign. A prime talking point of the Donald Trump campaign, the Trump Hotel has been referenced as evidence of his capability to run the United States. Speaking of his newest hotel, Mr. Trump said, "It's going to be amazing … It's a great thing for the

country. It's a great thing for Washington." His son, Eric Trump, touted the planned

Hotel in his primetime appearance during the Republican National Convention stating,

"Throughout my father's career, he has been repeatedly called on by government to step

in, save delayed, shuttered, and grossly over-budget public projects, [including] the

iconic old post office in Washington, D.C. … It's time for a president who can make

America great again, ahead of budget, and ahead of schedule, too."

11. The "deals" struck by Mr. Trump for his hotel business have also been a point of

discussion for those who are concerned about the prospect of a Trump presidency:

"Trump says he wants to run the nation like he's run his business," former Mayor

Michael Bloomberg told the Democratic National Convention, referencing Trump's

history of bankruptcies and non-payments to contractors. "God help us," continued Mr.

Bloomberg, "I'm a New Yorker, and I know a con when I see one." On August, 1, 2016,

Warren Buffett critiqued how Trump has run his hotel business, stating that over a

decade, his Atlantic City hotel venture "los[t] money every year, every single year, and

he takes out $44 million in compensation during that period."

12. The abnormality of the "deal" signed between the Trump Organization has emerged as a

contentious issue from concerns about the long duration of a lease and the low price tag

paid by the lessee among other "business" considerations, to the use of Colony Capital as

a co-investor to win the bid over other established hoteliers followed by Colony's

withdrawal from the deal after the bidding battle was won.

13. This lawsuit is sparked by the concern that local and federal agencies appear to have

agreed to Mr. Trump's demand to place restrictions on sections of Pennsylvania Avenue

and its sidewalks, "America's Main Street," that have been used as a site of free speech-

protected activity, for the restricted, priority or exclusive use and personal profit of the Trump Organization.

14. These issues coupled with the ongoing refusal of both federal and District officials to respond in a timely way to PCJF's FOIA requests regarding the alteration of historic public spaces for First Amendment-related activity raise serious questions about what information is being kept from the public's knowledge. The very bright light of the 2016 Presidential Campaign makes the stubborn refusal to comply with their legal obligations regarding public records disclosure under their respective Freedom of Information Acts deeply concerning. It leads the public to wonder whether they are hiding something regarding the "deals" struck with the Trump Organization as it affects this historic public fora and site for free speech and assembly and the impact on the public's right of access for free expression.

15. The Washington Post reported on February 26, 2016, that the Trump Organization had been granted by the municipal government the exclusive priority use of a traffic lane on Pennsylvania Avenue for valet parking, which would force long-standing cultural events such as the Cherry Blossom Street Festival to move and would have uncertain effects on the street protests that have at moments of historic significance filled all lanes of the avenue with democratic action and free speech demands. Other information available suggests that federal agencies have entered into an easement regarding the large plaza / national parkland surrounding the Benjamin Franklin statue which fronts the hotel, suggesting this plaza is off-limits to free speech activity.

16. On February 29, 2016, the Partnership for Civil Justice Fund filed Freedom of Information Act requests with the GSA, DOI and NPS seeking disclosure of

communications and agreements in the possession of those agencies regarding the use of public space (i.e., sidewalk and street space). A separate request, not the subject of this litigation, was filed with municipal authorities. The requests seek all communications of negotiations for restrictions on this historic public space as well as any determinations reflecting evaluations of the impact of the Trump Organization's apparent privatization of these spaces on the public interest, including specifically on the exercise of First Amendment-protected activity. It seeks all communications, emails, requests, applications, planning documents, memoranda of understanding, permits or other authorizing documents that would cede this space from the public to the Trump Organization.

17. The intent of the PCJF is, in the immediate, to determine the scope of any such agreements relating to public space, as information has been disclosed only haphazardly and in piecemeal and partial fashion by the involved parties. The PCJF intends to conduct an analysis of the cost and benefit upon free speech of any such agreements, including whether core constitutional rights and interests have been restricted. All information, including raw material as well as expert analysis, will be published and disseminated in order to educate the public and officials on this issue of key public interest.

18. Time is of the essence. Trump has thrust himself and his politics into the political realm, making his self-named hotel the physical site of his Washington, D.C., presence. The slated opening for the Trump Hotel is September 2016. Its significance for politics and protest is self-evident. With the approach of the presidential election, and Donald Trump seeking to be the person who determines matters of public policy, war or peace, mass deprivation of civil rights on the basis of ethnicity, religion or national origin, the use of

these public spaces - - and the decisions and determinations to remove or restrict them from public access - - is of immediate consequence to free speech interests and the public interest.

## JURISDICTION AND VENUE

19. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331 (federal question jurisdiction).

20. Venue lies properly in this Court pursuant to 28 U.S.C. § 1391(b) and 5 U.S.C. § 552(a)(3)(B) because a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia and the Defendants reside in the same.

## PARTIES

21. PARTNERSHIP FOR CIVIL JUSTICE FUND (PCJF) is incorporated pursuant to the District of Columbia Non-Profit Corporations Act and is based and headquartered in the District of Columbia. The PCJF is a not-for-profit legal and educational organization which, among other things, seeks to ensure that Federal, state and local governments respect the First Amendment rights of free speech and assembly. Among the focuses of the PCJF's work is the privatization of public space, in particular restrictions and limitations placed on the ability of the people to gather and engage in First Amendment-protected activity, dissent and political assembly. As a Washington, D.C.-based national organization, the PCJF is also concerned with the loss of access to public space that has been historically used for cultural activities and special events that add to the character and quality of life in the District of Columbia for those who live here and as the Nation's Capital.

22. The Partnership for Civil Justice Fund is a non-profit, 501(c)(3) tax-exempt charitable legal and educational organization which, among other things, works to ensure

transparency and openness in government operations. It also works to ensure

constitutional conduct within government practices affecting civil and constitutional

rights. The PCJF also seeks to educate the public on the issues of civil and constitutional

rights, and civil liberties. A primary organizational purpose is information dissemination.

The material requested is not for commercial use and is sought for legal and scholarly

review and research by the attorneys and staff of the PCJF and for publication and

dissemination to the public.

23. The information PCJF requests in this FOIA request will be used to conduct an analysis

of the cost and benefit upon free speech and First Amendment interests of any

agreements to alter or remove or privatize access to the public forum sidewalks, streets

and plazas in proximity to the Trump International Hotel within the Pennsylvania Avenue

National Historic Site, including whether core constitutional rights and interests have

been restricted. All information, including raw material as well as expert analysis, will be

published and disseminated in order to educate the public and officials on this issue of

key public interest.

24. PCJF is a "representative of the news media" within the meaning of 5 U.S.C. §

552(a)(4)(A)(ii) in that it gathers information of current interest to the public, uses its

editorial skills to turn raw materials into a distinct work, and distributes that work to an

audience.

25. Defendant DEPARTMENT OF THE INTERIOR (DOI) is an agency of the United States

within the meaning of 5 U.S.C. § 552(f)(1). The National Park Service (NPS) is a

component within the DOI. Each is charged with the duty to provide public access to

documents in its possession consistent with the requirements of the FOIA and is denying

Plaintiff access to records in contravention of law.

26. Defendant GENERAL SERVICES ADMINISTRATION (GSA) is an agency of the

United States within the meaning of 5 U.S.C. § 552(f)(1). The GSA is charged with the

duty to provide public access to documents in its possession consistent with the FOIA

and is denying Plaintiff access to records in contravention of law.

27. By letters dated February 29, 2016, and transmitted via e-mail or fax to the respective

Freedom of Information Act (FOIA) officers, the PCJF filed substantially identical FOIA

requests with the National Park Service and the General Services Administration seeking

public records relating to the use of public forums, sidewalks, plaza space and

Pennsylvania Avenue abutting the Old Post Office Building.

28. The FOIA requests sought "all documents, communications, applications, evaluations,

permits and agreements regarding use of public sidewalk and/or street space abutting the

Trump International Hotel in the Old Post Office Building."

29. The requests specifically included, but were not limited to, "all records reflecting

communications, emails, discussions, applications, planning documents, memoranda of

understanding, permits, authorizing documents, contracts, assurances, meeting notes,

reports, minutes, agreements, evaluations, determinations, maps, recommendations and

analysis, regarding priority, reserved, or exclusive access to and/or use of any portion of

the sidewalks and/or Pennsylvania Avenue abutting the Trump International Hotel at the

Old Post Office Building."

30. An underlying concern is that these quintessential public spaces have been effectively

privatized for the benefit of the Trump Organization, including effectively removing

these spaces from access by the public for purposes of protest, demonstration, dissent and

public assembly as well as cultural special events and festivals.

31. By way of illustration and not limitation, the FOIA requests sought:

    a. all communications involving negotiations with, requests, inquiry from, and responses to, any agent or representative of the Trump Organization, Trump Hotels, or Donald Trump regarding reserved, priority, exclusive or non-exclusive use of sidewalk and/or street space; all documents, including contracts, reflecting negotiations for the agreement referenced in the *Washington Post* [article dated February 26, 2016, "Thanks to Trump's hotel, D.C. street festivals have to make a few changes"]; all documents referencing interpretation or implementation of any agreements;

    b. all communications with, requests, inquiry and responses regarding use of this sidewalk and/or street space by any organization or individual for demonstrations or special events;

    c. all communications regarding use of, or access to, this sidewalk and/or street space involving the agency, including with any other representative of the federal government including the GSA, National Park Service and/or the Department of the Interior; and including with any representative of the District of Columbia government, including but not limited to the Office of the Mayor and the Metropolitan Police Department;

    d. all records reflecting evaluation of the impact of reserved, priority or exclusive use of the sidewalks and/or street space abutting the Trump International Hotel on the exercise of First Amendment protected activity.

32. The records are not sought for commercial use.

33. The FOIA requests are made by the PCJF as an educational 501(c)(3) organization for the

purposes of legal and scholarly research and for publication and dissemination to the

public.

34. In its FOIA requests, the PCJF described that:

This request is central to transparency that is required for there to be an accurate recounting and assessment of the activities of the federal government in regard to the privatization of public space and restrictions and limitations placed on the

ability of the people of the United States to gather and engage in First Amendment protected speech and assembly.

35. In its FOIA requests, the PCJF described its background and the public interests it advances, in part, as follows:

The Partnership for Civil Justice Fund is a non-profit, 501(c)(3) tax exempt charitable legal and educational organization which, among other things, works to ensure transparency and openness in government operations. It also works to ensure constitutional conduct within government practices affecting civil and constitutional rights. The PCJF also seeks to educate the public on the issues of civil and constitutional rights, and civil liberties. A primary organizational purpose is information dissemination. The material requested is not for commercial use and is sought for legal and scholarly review and research by the attorneys and staff of the PCJF and for publication and dissemination to the public.

36. The PCJF additionally requested a public interest fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).

**Response by the DOI / NPS**

37. The FOIA request to the NPS was transmitted via e-mail to NPS National Capitol Region FOIA Officer Brandon Bies and via fax to NPS FOIA Officer Charis Wilson on February 29, 2016.

38. An e-mail auto-response was transmitted in return, advising that Mr. Bies would be out of the office on March 1-2.

39. No acknowledgement was received from Ms. Wilson's office.

40. On April 11, 2016, the PCJF sent follow-up e-mails to Mr. Bies and Ms. Wilson. There was no agency determination issued within the 20-day statutory timeline nor was an extension invoked.

41. On April 12, 2016, the NPS via Mr. Bies advised that the request "has been assigned tracking # NPS 2016-00421. Your request has been assigned to the voluminous processing track because of the considerable number of responsive records and because

those records are dispersed across a number of National Park Service offices and facilities. My office is currently processing and reviewing responsive records. Moving forward we will keep you apprised as to the status of your request."

42. No response to the April 11 email was received from the office of Ms. Wilson.

43. On April 20, 2016, the PCJF sent a second follow-up email to Ms. Wilson.

44. The same day, Ms. Wilson replied stating that Mr. Bies had already replied on behalf of the NPS.

45. The PCJF sent a follow-up email the same day clarifying that the FOIA request was issued to the NPS and DOI as an entire agency.

46. Ms. Wilson replied the same day stating that "In accordance with DOI FOIA regulations, a request to a particular bureau will be presumed to only seek records from that particular component, in this case the National Park Service.  Accordingly, a search for responsive records held by NPS was conducted and it was determined that the potentially responsive records were held by the National Capitol Region.  Accordingly, your request was assigned to NCR for processing and their response will constitute the entirety of the NPS response."

47. As of the date of the filing of the instant complaint, there has been no further information provided by DOI/NPS.

48. As of the date of the instant filing, the DOI/NPS has not made the requested records available nor did DOI/NPS issue a "determination" as required under the FOIA statute.

**Response by the GSA**

49. The FOIA request was transmitted via fax to the GSA FOIA Requester Service Center on February 29, 2016.

50. The GSA provided no initial acknowledgment in response to the February 29, 2016, FOIA request.

51. On April 11, 2016, the PCJF sent a follow-up e-mail to the GSA requesting a status update. There was no agency determination issued within the 20-day statutory timeline nor was an extension invoked.

52. On April 19, 2016, the GSA transmitted a fax to the PCJF. FOIA Program Analyst Toni Slappy advised that "I had expected to respond to you no later than March 30, 2016. As you are aware, Mr. Trump is running for office, due to current circumstances we've received a wave of 'Trump' requests." Ms. Slappy wrote, "I've missed my window to extend [the time for responding to] this request without requesting permission. We've gone out to several areas in order to do a complete and thorough search of records. Please know that we have not forgotten about your request, we are working diligently to respond. We have posted some Donald Trump information to our reading room and we will continue to add more and [sic] it is made available to our agency. To view all parts of the ground lease and any amendments to the Old Post Office, you can visit our website at: http://www.gsa.gov/portal/content/305477."

53. Ms. Slappy stated "I can not [sic] pinpoint an estimated date of delivery" of documents in response to the PCJF's request.

54. Though no further communications were received from the GSA via any format, including fax, email or mail, the PCJF discovered that its request is listed as being closed on May 27, 2016 on the GSA's online FOIA site, with a "Final Disposition" of "Partial grant/partial denial." No letter of final disposition has been communicated to the PCJF, nor any information communicating a "partial grant" or "partial denial," nor have any

exemptions from withholding been identified. No agency "determination" letter has ever

been communicated, let alone a final disposition.  The GSA's online site lists several

PDFs of documents that have been uploaded. These documents do not reflect the scope of

the PCJF's request, are not a full response, and among other whole categories of missing

information include no emails or communications.

55. The PCJF attempted to reach Ms. Slappy or another person in the FOIA Requester

Service Center on August 2, 2016. Ms. Slappy was unavailable and no other person at the

GSA was made available to provide information about FOIA requests. A detailed

message was left for Ms. Slappy. Ms. Slappy left a brief return voicemail stating that she

was not at her desk but not providing a detailed response to the inquiry. Continued efforts

to reach Ms. Slappy have been unsuccessful.

56. As of the date of the filing of the instant complaint, there has been no further information

provided by the GSA.

57. As of the date of the filing of the instant complaint, the GSA has not complied with the

FOIA request nor did the GSA issue the PCJF a "determination" letter as required under

the FOIA statute.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

58.  A person making a FOIA request "shall be deemed to have exhausted his administrative

remedies with respect to such request if the agency fails to comply with the applicable

time limit provisions of this paragraph." 5 U.S.C. § 552(a)(6)(C)(i).

59. The FOIA requires an agency receiving a request for records to "determine within 20

days (excepting Saturdays, Sundays and legal public holidays) after the receipt of any

such request whether to comply with such request and shall immediately notify the

person making such request of such determination and the reasons therefore, and of the right of such person to appeal to the head of the agency any adverse determination …" 5 U.S.C. § 552(a)(6)(A)(i).

60. No agency has requested or invoked any right to an extension of this period in response to the PCJF's FOIA requests.

61. The DOI/NPS and the GSA were each obligated to issue its respective determination whether to comply with the request, including the scope of the documents it would produce and any exemptions it would claim, as well as any fee assessment determination, no later than March 28, 2016.

62. By March 28, 2016, neither defendant agency had issued such a determination, nor provided notice to PCJF of any such determination, nor had any issued records in response.

63. No unusual or exceptional circumstances exist or have been asserted by the defendant agencies. No extension was invoked.

64. Accordingly, the PCJF has exhausted its administrative remedies.

65. The FOIA provides that, absent exceptional circumstances neither claimed nor present herein, an agency is precluded from assessing search fees or duplication fees for a news media requester if the agency has failed to comply with any time limit set forth under 5 U.S.C. § 552(a)(6). *See* 5 U.S.C. § 552(a)(4)(A)(viii).

## COUNT ONE
### WRONGFUL WITHHOLDING OF PUBLIC RECORDS
### FAILURE TO TIMELY ISSUE FINAL DETERMINATION
### FAILURE TO GRANT PUBLIC INTEREST FEE WAIVER REQUEST

66. The preceding paragraphs numbered 1 through 65 are incorporated by reference as if set forth herein.

16

67. The defendant agencies have each failed to produce and withheld responsive records in response to the PCJF's February 29, 2016, FOIA request(s).

68. The defendant agencies have each failed to timely and properly issue a determination as to whether each will comply in whole or in part with the underlying request(s).

69. The defendant agencies have each failed to grant the PCJF's request for a public interest fee waiver.

70. WHEREFORE, PCJF respectfully requests that this Court grant the following relief:

    a.   Declare that each agency's failure to timely issue a determination was in violation of the FOIA;

    b.   Declare that the failure to produce or the withholding of responsive records described in the February 29, 2016, FOIA request(s) was unlawful;

    c.   Declare that the agencies' failure to grant the requested public interest fee waiver request was unlawful;

    d.   Order the DOI/NPS and the GSA to release the requested documents within twenty (20) days, without imposing search or duplication costs;

    e.   Award PCJF reasonable attorney's fees and litigation costs incurred in this case under 5 U.S.C. § 552(a)(4)(E);

    f.   Grant such further relief as the Court may deem to be just and appropriate.

August 3, 2016                           Respectfully submitted,

                                         /s/ Carl Messineo
                                         Carl Messineo (Bar # 450033)
                                         cm@justiceonline.org
                                         PARTNERSHIP FOR CIVIL JUSTICE FUND
                                         617 Florida Ave NW
                                         Washington, D.C. 20001
                                         (202) 232-1180 x201; (202) 747-7747 (fax)

                                         /s/ Mara Verheyden-Hilliard
                                         Mara Verheyden-Hilliard (Bar # 450031)
                                         mvh@justiceonline.org
                                         PARTNERSHIP FOR CIVIL JUSTICE FUND
                                         617 Florida Ave NW
                                         Washington, D.C. 20001
                                         (202) 232-1180 x202; (202) 747-7747 (fax)